IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Mary Hancock, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   15 C 4959 |
| | ) | |
| International Collection Services, LLC, | ) | |
| a South Carolina limited liability | ) | |
| company, and Dynamic Recovery | ) | |
| Solutions, LLC, a South Carolina | ) | |
| limited liability company, | ) | |
| | ) | |
| Defendants. | ) | <u>Jury Demanded</u> |

**COMPLAINT**

Plaintiff, Mary Hancock, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, <u>et</u> <u>seq.</u> ("FDCPA"), for a finding that Defendants' debt collection actions violated the FDCPA, and to recover damages, and alleges:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because: a) many of the acts and transactions occurred here; and, b) Defendants reside and transact business here.

**PARTIES**

3. Plaintiff, Mary Hancock ("Hancock"), is a citizen of the State of Utah, from whom Defendants attempted to collect a delinquent consumer debt that was allegedly owed for an MBNA credit card, despite the fact that she did not owe that debt, and despite the fact that the Defendants did not own the account. Moreover, these

collection efforts also occurred despite the fact that Ms. Hancock had exercised her rights, under the FDCPA, to refuse to pay the debt and to be represented by the legal aid attorneys at the Chicago Legal Clinic's Legal Advocates for Seniors and People with Disabilities program ("LASPD"), located in Chicago, Illinois.

  4. Defendant, International Collection Services, LLC ("ICS"), is South Carolina limited liability company that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, delinquent consumer debts. ICS operates a nationwide delinquent debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of Illinois. In fact, Defendant ICS was acting as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debt it attempted to collect from Plaintiff.

  5. Defendant ICS is a bad debt buyer that buys up large portfolios of delinquent consumer debts for pennies on the dollar, which it then seeks to collect upon via its sister company, Dynamic Recovery Solutions.

  6. Defendant, Dynamic Recovery Solutions, LLC ("DRS"), is a South Carolina limited liability company that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer debts. Defendant DRS operates a nationwide debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of Illinois. In fact, Defendant DRS was acting as a debt collector as to the delinquent consumer debt it attempted to collect from Ms. Hancock.

7. Defendants ICS and DRS are both authorized to conduct business in the State of Illinois and maintain registered agents within the State of Illinois, see, records from the Illinois Secretary of State, attached as Group Exhibit A. In fact, Defendants ICS and DRS each conduct business in Illinois.

8. Moreover, Defendant DRS is licensed as a collection agency in Illinois, see, record from the Illinois Division of Professional Regulation, attached as Exhibit B. In fact, Defendants ICS and DRS each act as debt collection agencies in Illinois.

## FACTUAL ALLEGATIONS

9. Ms. Hancock is a senior citizen, with limited assets and income, who fell behind on paying her bills, including a debt she owed originally for an MBNA account, which she stopped paying on during 2005. At some point in time after that debt became delinquent, another debt buyer, Bureaus Investment Group Portfolio No. 10, LLC ("BIG10") allegedly bought/obtained Ms. Hancock's MBNA debt, and when BIG10 began trying to collect the MBNA debt from her in 2008, she sought the assistance of legal aid attorneys at the Chicago Legal Clinic's LASPD program, regarding her financial difficulties and Defendants' collection actions.

10. Ms. Hancock's attorneys at LASPD informed BIG10 in writing, that Ms. Hancock was represented by counsel, and directed BIG10 to cease contacting her, and to cease all further collection activities because Ms. Hancock was forced, by her financial circumstances, to refuse to pay her unsecured debt.

11. Because BIG10 ignored this notice and continued to attempt to collect the debt directly from Ms. Hancock, on November 5, 2012, Ms. Hancock sued BIG10 in a matter styled Hancock v. Bureaus Investment Group Portfolio No. 10, et al, No 12 C

8849 (N.D. Ill.), to make it stop violating the FDCPA. This lawsuit was resolved via a Settlement Agreement and Release, dated December 14, 2012, which specifically provided that Ms. Hancock was "released from any liability for the alleged debt at issue" and that BIG10 was not to "transfer sell, or assign" that debt. A redacted copy of this settlement agreement is attached as Exhibit C.

12. In utter disregard for the law, another group of debt collectors, Oxford Law and ACCE, then tried to collect the MBNA debt from Ms. Hancock, even though she did not owe the debt, and even though BIG10 had not sold them the debt. On June 3, 2014, Oxford Law and ACCE sent Ms. Hancock a collection letter that demanded payment of the same MBNA account.

13. This forced Ms. Hancock's legal aid attorney to write to Oxford and ACCE on June 18, 2014, to tell them to stop their illegal collection actions. Unbelievably, on July 22, 2914, Oxford and ACCE then sent yet another collection letter directly to Ms. Hancock.

14. This forced Ms. Hancock's legal aid attorney to write yet another letter, demanding that these illegal collection actions cease. Moreover, on July 29, 2014, Ms. Hancock sued Oxford and BIG10 in a matter styled Hancock v. BIG 10 and Oxford, No. 14 C 5796, to make these illegal collection actions stop. During that lawsuit, BIG10 proved that it had not sold or transferred the retired MBNA to Oxford or ACCE.

15. Defendant ICS then somehow obtained Ms. Hancock's alleged MBNA account and had its sister company, Defendant DRS, demand payment of the MBNA account from Ms. Hancock, which did so by calling Ms. Hancock at the beginning of March, 2015, from phone number 877-821-1658.

4

16. Accordingly, on March 16, 2015, Ms. Hancock's LASPD attorneys had to send Defendants a letter directing them to cease communications and to cease collections. Copies of this letter and fax confirmation are attached as Exhibit <u>D</u>.

17. In utter disregard for the law, Defendants directly called Ms. Hancock yet again on March 19, 2015, from phone number 877-821-1658, to collect the bogus MBNA account.

18. Accordingly, Ms. Hancock's LASPD attorneys had to again send Defendants a letter on March 23, 2015, to direct them to cease communications and cease collections. Copies of this letter and fax confirmation are attached as Exhibit <u>E</u>.

19. Not only is the MBNA account at issue not owed because of the settlement in the prior lawsuit, and the ongoing lawsuit, it also is time-barred under Utah's statute of limitations for the collection of credit card debts (4 years unwritten/6 years written), <u>see</u>, Utah Judicial Code Title 78B Chapter 2 Section 307 and 309.

20. Moreover, Defendants knew, or should have known, that there was a problem with the debt at issue due to the age of the portfolio of the debts that included Plaintiff's alleged debt. In fact, any reasonable review of the records on this account would have shown that the account should not have been collected upon.

21. Defendants' collection actions complained of herein occurred within one year of the date of this Complaint.

22. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. <u>See</u>, <u>Gammon v. GC Services, Ltd. Partnership</u>, 27 F.3d 1254, 1257 (7th Cir. 1994).

5

## COUNT I
### Violation Of § 1692c(c) Of The FDCPA --
### Failure To Cease Communications And Cease Collections

23. Plaintiff adopts and realleges ¶¶ 1-22.

24. Section 1692c(c) of the FDCPA prohibits a debt collector from communicating with a consumer after a direction to cease communications, and from continuing to demand payment of a debt that the consumer has indicated that they refuse to pay, see, 15 U.S.C. § 1692c(c).

25. Here, the letters from Plaintiff's legal aid attorneys and the prior lawsuits told Defendants to cease collections and cease communications. By continuing to communicate regarding this debt and demanding payment, Defendants violated § 1692c(c) of the FDCPA.

26. Defendants' violations of § 1692c(c) of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## COUNT II
### Violation Of § 1692c(a)(2) Of The FDCPA --
### Communicating With A Consumer Represented By Counsel

27. Plaintiff adopts and realleges ¶¶ 1-22.

28. Section 1692c(a)(2) of the FDCPA prohibits a debt collector from communicating with a consumer if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address. See, 15 U.S.C. § 1692c(a)(2).

29. Defendants knew that Ms. Hancock was represented by counsel in connection with her debts because her attorneys at LASPD had informed Defendants,

6

both directly in writing, and indirectly in writing through their alleged predecessors-in-interest, as well as via the prior lawsuits, that Ms. Hancock was represented by counsel, and had directed a cessation of communications with her. By directly calling Ms. Hancock, despite being advised that she was represented by counsel, Defendants violated § 1692c(a)(2) of the FDCPA.

30. Defendants' violations of § 1692c(a)(2) of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. <u>See</u>, 15 U.S.C. § 1692k.

## COUNT III
### Violation Of § 1692e(5) Of The FDCPA – Taking An Action That Could Not Be Legally Taken

31. Plaintiff adopts and realleges ¶¶ 1-22.

32. Section 1692e of the FDCPA prohibits debt collectors from using any false, deceptive or misleading representation or means in connection with the collection of any debt, including, but not limited to, taking actions that cannot legally be taken in connection with the collection of a debt, <u>see</u> 15 U.S.C. § 1692e(5).

33. Attempts by debt collectors to collect time-barred debts have been widely held to violate § 1692e of the FDCPA, <u>see</u>, <u>Phillips v. Asset Acceptance</u>, 736 F.3d. 1076, 1079 (7th Cir. 2013); and <u>McMahon v. LVNV Funding</u>, 744 F.3d 1010, 1022 (7th Cir. 2014).

34. By collecting the time-barred debt at issue here, without any warning that the debt was beyond the statute of limitations, Defendants took an action that they could not legally take and/or was otherwise deceptive or misleading, in violation of § 1692e of the FDCPA.

35. Moreover, demanding payment of a debt that is no longer owed due to a settlement, is a further violation of § 1692e of the FDCPA.

36. Defendants' violations of § 1692e of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## COUNT IV
### Violation Of § 1692f Of The FDCPA – Unfair And Unconscionable Collection Actions

37. Plaintiff adopts and realleges ¶¶ 1-22.

38. Section 1692f of the FDCPA prohibits debt collectors using unfair or unconscionable means to collect or attempt to collect a debt, see 15 U.S.C. § 1692f.

39. Purchasing/transferring a settled debt, demanding payment of a debt that is no longer owed (due to a settlement and/or expiration of the statute of limitations), and repeatedly contacting a represented party, all constitute the use of unfair or unconscionable means to collect a debt, in violation of § 1692f of the FDCPA.

40. Defendants' violations of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

Plaintiff, Mary Hancock, prays that this Court:

1. Find that Defendants' debt collection actions violated the FDCPA;

2. Enter judgment in favor of Plaintiff Hancock, and against Defendants, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and,

3. Grant such further relief as deemed just.

## JURY DEMAND

Plaintiff, Mary Hancock, demands trial by jury.

                          Mary Hancock,

                          By: /s/ David J. Philipps
                          One of Plaintiff's Attorneys

Dated: June 5, 2015

David J. Philipps    (Ill. Bar No. 06196285)
Mary E. Philipps    (Ill. Bar No. 06197113)
Angie K. Robertson (Ill. Bar No. 06302858)
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com
angiekrobertson@aol.com